## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SYLVESTER TRAYLOR, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:10-cv-639 (CFD) |
| | : | |
| DANIEL STEWARD, | : | |
| RYAN RYAN DELUCA LLP, | : | |
| DONALD LEONE, CANDICE WEIGLE- | : | |
| SPIER, TONILYNN WOOD and TOWN | : | |
| OF WATERFORD, | : | |
|     Defendants. | : | |

## RULING ON MOTIONS TO DISMISS

### I.      Introduction

This is an action brought pursuant to 42 U.S.C. Sections 1981, 1983, 1985, 1986, and various provisions of the U.S. Constitution and Connecticut law by *pro se* plaintiff Sylvester Traylor against Daniel Steward, First Selectman for the Town of Waterford ("Steward"), the Town of Waterford and its employees, the Law Offices of Ryan, Ryan, and Deluca LLP ("RRD"), Donald Leone of the law firm of Chinigo, Leone & Maruzo LLP, Candice Weigle-Spier, (a psychologist) and Tonilynn Wood, Traylor's sister-in-law.  The twelve-count amended complaint ("Amended Complaint") seems to allege that these defendants – in various ways – slandered and discriminated against the plaintiff, illegally seized his property, violated his rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, violated the Connecticut Unfair Trade Practices Act, and committed a number of torts.

### II.      Background

Traylor filed this action in the Connecticut Superior Court, and Defendants removed it to

this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(c).  On May 21, 2010, the plaintiff moved to amend his complaint, and his motion was granted.

The Amended Complaint alleged twelve counts against the various defendants in this case, all stemming from events taking place from 2003 to 2009.[1]  The Amended Complaint states that Traylor, who is African-American, was married to Roberta Mae Traylor, a "White-American" whose family, including Defendant Tonilynn Wood (her sister), did not approve of the marriage and harassed the couple as a result.  Traylor reported these incidents of harassment to the Town of Waterford Police Department ("Waterford Police") in 2003 but allegedly received no response.

On February 14, 2004, Traylor called 911 and reported that his wife had threatened to kill herself and played a tape recording of his wife making this threat.  He also reported that his wife had not been taking her antidepressant medication.  Roberta Traylor did take her own life on March 1, 2004.  The Amended Complaint does not mention whether any actions were taken by the Waterford Police after his initial 911 call; however, Traylor notes that he pursued a lawsuit against the Town of Waterford in 2004 for its "failure to take adequate measures" to protect his wife.  (Amended Complaint ¶ 16).  Since the time of his wife's death, Traylor claims to be the target for harassment and retaliation stemming in part from that lawsuit.

At some point after his wife's death, Plaintiff was employed as a commercial fisherman in Alaska.  While he was away, the other residents in his Waterford home told him that

---

[1]  These facts are taken from the allegations of the plaintiff's Amended Complaint, dated May 21, 2010, which is the operative complaint.  The allegations must be assumed true for the purpose of resolving the motion to dismiss.  Plaintiff moved to amend his complaint further on February 25, 2011 and March 2, 2011, but this Court denied both of those motions.

employees of the Town of Waterford as well as Defendant Tonilynn Wood were making slanderous statements. While the content of those statements is unclear, Traylor complains elsewhere that he was the subject of slanderous accusations that he killed his wife.

It appears from the complaint that after his wife's death, Traylor commenced a state court action against Dr. Bassam Awwa. It is also not clear from the complaint what is Dr. Awwa's relationship to Traylor or his wife, but it does seem that the action was related in some way to his wife's death. Defendant Donald Leone (an attorney) represented Dr. Awwa in that action. The Amended Complaint also seems to allege that Defendant Candice Weigle-Spier, a psychologist, participated in the litigation under the direction of Defendant Leone. It is not clear from the Amended Complaint or from Dr. Weigle-Spier's Motion to Dismiss what role she played in the litigation. Traylor alleges that during the course of the litigation both Leone and Weigle-Spier made slanderous remarks concerning his wife's death.

In February 2009, Traylor received a package of documents from an employee of the Town of Waterford, which contained a copy of a trust agreement executed by Traylor and his wife in 2001. Traylor had allegedly been searching for this document for years, and he concludes in his complaint that the Town of Waterford must have acquired the original copy of this document through an illegal search of his home.

On March 16, 2009, Traylor initiated a complaint with the Waterford Police, and after some delay, an African-American police officer appeared "with an attitude" and refused to take his complaint and threatened to arrest Traylor if he did not leave the premises. That same day, Traylor filed another civilian complaint with the Waterford Police, presumably against the officer who had spoken to him earlier.

Traylor claims that on the night of June 20, 2009, he saw a Waterford police officer searching Traylor's property near his house with a flashlight. When Traylor confronted the officer, the officer said the Waterford Police had received a call from Traylor about a dead deer in his driveway.  Traylor never made such a call, and when he later checked with the Waterford Police, he was told that a woman in the area had reported the deer in his driveway.

On August 2, 2009, Traylor reported to the Waterford Police that his neighbor's dog attacked Traylor's dog in front of the neighbor's home.  When an officer responded to the call, she was allegedly hostile and referenced Traylor's earlier complaint against her fellow officer. Traylor also claims that on August 17, 2009, an off-duty police officer encouraged Traylor's neighbor to make a false statement to the Waterford Police concerning Traylor.  That same day, another police officer allegedly told Traylor that if his dog ever defecated on his neighbor's lawn, Traylor would be arrested.  In response to these interactions with his neighbor, Traylor complained to the Waterford Police, but they refused to take his complaint.

On August 31, 2009, Traylor filed another civilian complaint against the Waterford Police Department and its First Selectman, who was presumably Defendant Steward.  On September 25, 2009, the cousin of a Waterford police officer drove over Traylor's mailbox. Allegedly, the police officer told his cousin to make a false statement that he drove over the mailbox because he saw a deer.  Traylor also alleges that the Town of Waterford endangered his life and safety by not placing a safety sign or caution light near his home after Traylor made a request for such a sign or light to a traffic officer.

Traylor alleges that these actions by the Town of Waterford and its employees were motivated both by his race and interracial marriage and by a desire to retaliate against him for his

4

complaints against the Waterford Police.

All of these events culminated in Traylor filing this action seeking $15,000,000 in damages and return of the original trust document, which he alleges is now in the hands of the Waterford Police.  Defendant Wood moved to dismiss the Amended Complaint on February 17, 2011 (Dkt. # 85).  Defendant Weigle-Spier answered the Amended Complaint on June 4, 2010 (Dkt. #42) and moved to dismiss the Amended Complaint on February 18, 2011 (Dkt. # 87). Defendants Steward, RRD, and the Town of Waterford jointly filed a motion to dismiss the Amended Complaint on February 22, 2011 (Dkt. # 90).  Defendant Leone moved to dismiss the Amended Complaint on February 22, 2011 (Dkt. # 92).

It is difficult to parse the various claims made by Traylor and to determine who is the subject of each claim.  Therefore, this Court makes its ruling here on its best interpretation of the claims in Traylor's Amended Complaint.

## III.    Applicable Law and Discussion

### A.    Legal Standard

All Defendants argue in their Motions to Dismiss that Traylor's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) (and, in the case of Dr. Weigle-Spier, Fed. R. Civ. P. 12(c)).  To survive a motion to dismiss under Fed. R. Civ. P.12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (internal citations omitted).  In determining whether Traylor has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party.  See In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

Where one party is proceeding *pro se*, the court must read that party's papers liberally and interpret them to raise the strongest arguments suggested.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  To survive a motion to dismiss for failure to state a claim, however, "even a pro se complaint 'must contain sufficient factual matter, accepted as true,'" to state a claim that is plausible on its face.  Derisme v. Hunt Leibert Jacobson, PC, No. 3:10cv244, 2010 WL 3417857 (D. Conn. Aug. 26, 2010) (quoting Ashcroft, 129 S. Ct. at 1949).

## B.    Claims Against All Defendants

### i. Conspiracy under 42 U.S.C. § 1985

Traylor asserts a claim pursuant to 42 U.S.C. § 1985 against all Defendants, alleging that they all conspired to deprive him of his constitutional rights because of his race.  This Court construes his claim as arising from § 1985(3), which is the only relevant provision of that Section.  Defendants have moved to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6).  To state a claim under § 1985(3), Traylor must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)

To successfully plead such a conspiracy, Traylor must "'provide some factual basis supporting a meeting of the minds such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (quoting Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003); see Emmerling v. Town of Richmond, No. 10-3246-cv, 2011 WL 2315167, at *2 (2d Cir. 2011) (affirming dismissal of plaintiff's § 1985(3) claim because plaintiff "provided only vague and conclusory allegations of conspiracy").[2]  Traylor has not alleged any specific facts to demonstrate such a meeting of the minds other than the conclusory allegation that all of the defendants acted "jointly, [in] concert with each other" and have "'conspired' together with other 'White-Americans'" to deprive him of his rights (Amended Complaint ¶ 103).  It is not evident from the complaint that many of the Defendants had any connection to each other or even knew of each other, much less explicitly or tacitly conspired against Traylor.  Since Defendant has not adequately alleged a conspiracy between any or all of the Defendants, his claims under § 1985(3) are dismissed.[3]

> ii. 42 U.S.C. § 1986

Traylor also seems to allege a claim under 42 U.S.C. § 1986, arguing that each of the Defendants "had the duty and the opportunity" to protect Traylor from the actions of the other Defendants (Amended Complaint ¶ 105).  While § 1986 subjects a party to liability if he knew of

---

[2] A similar analysis would apply to any claims of conspiracy falling under § 1983.  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993) (internal quotations omitted).

[3] Further, as discussed below, Traylor has not sufficiently alleged any deprivation of his rights as a citizen of the United States.

acts conspired to be done under § 1985 and could have but failed to prevent those acts, this Court

has already dismissed Traylor's § 1985 claims and therefore must dismiss his claims under §

1986. See Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (affirming the dismissal of a

§ 1986 claim because "a § 1986 claim must be predicated on a valid § 1985 claim" (internal

quotations omitted)).

### C.    Claims Against the Non-Governmental Defendants

This Court now considers Traylor's other claims against the four private actors named as

Defendants: Tonilynn Wood, RRD, Donald Leone, and Candice Weidle-Spier.  Aside from the

§§ 1985 and 1986 claims against all of the Defendants, which this Court dismissed above, the

only remaining federal claim made against any of these four defendants is Count Eleven's claim

that RRD violated Traylor's Fourth Amendment rights by "illegally obtaining the Traylor's

family Trust documents." (Amended Complaint ¶ 98).  The Court assumes Traylor's cause of

action stems from 42 U.S.C. § 1983, in which case Traylor must allege some personal

involvement on RRD's part in the illegal search and seizure.[4] Allegations of personal

involvement by the particular defendants is a prerequisite to liability under a § 1983 claim.  See

Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in [the Second] Circuit that

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983." (internal quotation marks omitted)); Gaston v. Coughlin, 249

F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the

alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983.");

---

[4] There are also obvious issues concerning whether this defendant is a state actor subject to § 1983 liability.

Piscottano v. Town of Somers, 396 F. Supp. 2d 187, 197 (D. Conn. 2005) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

Here, Traylor makes no such allegations of personal involvement by RRD; in fact there are no factual allegations at all against RRD with regards to this count. Therefore, any claim of § 1983 liability for a Fourth Amendment violation by RRD is dismissed.

Only the following claims, all of which arise under state law, then remain against the four non-governmental defendants.  Against RRD, Traylor brings a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq. ("CUTPA").[5]  Against his sister-in-law Tonilynn Wood, Traylor brings a claim of defamation for slanderous remarks she allegedly made concerning the death of Traylor's wife.  He also brings a claim for intentional and negligent infliction of emotional distress stemming from those remarks.  Traylor brings a similar claim of defamation and resulting intentional and negligent infliction of emotional distress against Donald Leone.  He also asserts a claim under CUTPA against Leone.  Against Dr. Weidle-Spier, Traylor brings the same defamation claim as well as a CUTPA claim.

This Court has original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Thus, if the Court properly has jurisdiction over any of the federal claims,

---

[5] Traylor also claims that RRD and Leone violated the Connecticut Rules of Professional Conduct.  Such violations must first be brought before the statewide bar counsel in accordance with Practice Book § 2-32.  This Court does not have jurisdiction over such violations and therefore must dismiss those claims.

which arise from the same case or controversy as the various state law tort and statutory claims,
the Court also has subject matter jurisdiction as these state law claims, which arise from a
"common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725
(1966).

However, this Court may decline to exercise supplemental jurisdiction over a claim if it
has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  Because
this Court has dismissed the §§ 1983, 1985, and 1986 claims against all four of the non-
governmental defendants, thus dismissing all of the federal claims against them, this Court
declines to exercise supplemental jurisdiction over the state law claims against these four
defendants.  Therefore all claims against these four defendants are dismissed.

### D.     Claims Against the Town of Waterford and First Selectman Daniel Steward

Traylor asserts a claim under 42 U.S.C. § 1981 and 1983 against the Town of Waterford
and Daniel Steward in his official capacity, alleging that the Town of Waterford Police
Department refused to respond adequately or at all to a series of complaints because of his race
and interracial marriage.   To state a claim under § 1981, Traylor must allege that: 1) Traylor is a
member of a racial minority; 2) defendants had an intent to discriminate on the basis of race; and
3) the discrimination concerned an activity enumerated in the statute, including making or
enforcing contracts, suing or being sued, and giving evidence. Mian v. Donaldson, Lufkin &
Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  The elements of a § 1983 claim are "1) a
person 2) acting under the color of state law 3) subjected the plaintiff or caused the plaintiff to be
subjected 4) to the deprivation of a right secured by the Constitution or the laws of the United
States."  City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985).

10

When a plaintiff sues a municipality or an individual in his official capacity[6] under §
1981 or § 1983, the plaintiff is "required to show that the challenged acts were performed
pursuant to a municipal policy or custom." Patterson v. County of Oneida, N.Y., 375 F.3d 206,
226 (2d Cir. 2004) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733-36 (1989) (§ 1981);
Monell v. Dep't of Social Servs., 436 U.S. 658, 692-94 (1978) (§ 1983)).  This policy or custom
can be an official act of lawmakers or policymakers but can also be a practice "so persistent and
widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359
(2011).  For his § 1983 claim, Traylor must also allege an "affirmative link between the policy
and the deprivation of constitutional rights."  Johnson v. N.Y.C, No. 1:06cv9426, 2011 WL
666161, at *3 (S.D.N.Y. Feb. 15, 2011) (internal quotations omitted).

Traylor states that Defendants created "a policy and custom" of "refusing to accept any
complaints made" by Traylor.  To support this allegation, Traylor alleges the following facts that
can be construed to support his claims under § 1981 or § 1983 against the Town of Waterford.
He alleges that, because of his race and interracial marriage, the Waterford police officers have
ignored his requests for assistance over the years.  When he complained to the police of
harassment by his wife's family, the police failed to respond to these complaints.  When he
reported that his dog was attacked by a neighbor's dog, the responding officer was allegedly
hostile. When he reported that a neighbor was harassing him, the police department did not take
his complaint. When he requested a street sign be placed near his house because it was on a

---

[6] This Court does not construe the Amended Complaint as making a § 1981 and § 1983
claim against Daniel Steward in his individual capacity.  Even if Traylor did make those claims,
the Amended Complaint makes no allegations of Steward's personal involvement in any of the
incidents that can be construed as supporting those claims.

particularly dangerous stretch of road, the Town of Waterford refused to do so.  He also alleges that the police forced him to make his civilian complaint to an African-American police officer because of his own race.

These allegations fall "far short of establishing a practice that is so persistent and widespread as to justify the imposition of municipal liability." Giacco v. N.Y.C., 308 Fed. Appx. 470, 472 (2d Cir. 2009) (internal quotations omitted) (finding that four examples of a particular practice was not sufficient to establish pervasiveness to survive a motion for summary judgment); Bennerson v. N.Y.C., No. 03cv10182, 2004 WL 902166, at *4 (S.D.N.Y. 2004) (finding that allegations of two incidents are not sufficient to demonstrate a policy or custom to survive a motion to dismiss); Johnson, 2011 WL 666161, at *4-5 (dismissing a 1983 claim against a municipality because "a string of single incidents" was insufficient to allege a widespread practice).  The incidents cited also do not involve a single municipal officer with authority to establish municipal policy.[7]  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Therefore, Traylor does not sufficiently make out a claim under § 1981 or § 1983 against the Town of Waterford, and those claims are dismissed.

Even if Traylor had successfully alleged a widespread custom or policy, he fails to allege other necessary elements of claims under § 1981 or § 1983.  "Essential to an action under Section

_____

[7] While it may be the case that if the Town of Waterford had "impliedly or tacitly authorized, approved or encouraged" the behavior of its police officers alleged in the Amended Complaint, then it promulgated an official policy, see Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980), Traylor makes no allegations that anyone but those specific police officers involved in the particular incidents he lists knew of or made any decisions regarding his complaints.  See Id. (reversing a judgment against a municipality because there was no evidence that the municipality's policymaking board knew of or should have known of any police animus towards the plaintiff).

1981 are allegations that the defendants' acts were purposefully discriminatory, and racially

motivated." Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988) (internal citations omitted).

The complaint must contain "fact-specific allegations of a causal link between defendant's

conduct and plaintiff's race." Hayes v. Sweeney, 961 F. Supp. 467, 477 (W.D.N.Y. 1997) (citing

Albert, 851 F.2d at 572-73).  The Amended Complaint fails to provide enough facts to "raise a

plausible inference" that Traylor was subjected to race-based discrimination by the Waterford

Police.  Nevin v. Citibank, 107 F. Supp. 2d 333, 349 (S.D.N.Y. 2000).  Aside from Traylor's

conclusions that the Waterford police officers' decisions to act or not to act on his complaints

were motivated by his race and interracial marriage, Traylor's own description of the incidents

demonstrates that officers of a variety of races and over the course of several years either

investigated and reasonably chose how to respond to his numerous complaints.

      None of the acts alleged by Traylor on the part of the Town of Waterford police amounts

to a "deprivation of a right secured by the Constitution or the laws of the United States," the final

element of a § 1983 claim.  The U.S. Supreme Court has held that the Due Process Clause of the

Fourteenth Amendment imposes "no affirmative obligation on the State to provide the general

public with adequate protective services" except in particular circumstances, none of which apply

here. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197-98

(1989).  And although Traylor alleges that the police department made its decisions not to

investigate his complaints based on his race and interracial marriage, thus violating his rights

under the Equal Protection Clause of the Fourteenth Amendment, as noted above, he alleges no

"supporting or explanatory facts" concerning the racial motivation. Brisbane v. Milano, No.

3:08cv1328, 2010 WL 3000975, at *4 (D. Conn. July 27, 2010) (dismissing an equal protection

claim because allegations that police did not investigate plaintiffs' robbery complaint because plaintiff was black were conclusory and unsupported by any facts); see Collins v. West Hartford Police Dept., 324 Fed. Appx. 137, 139 (2d Cir. 2009). In fact, Traylor himself provides another motivation for the police officers' alleged indifference to his claims—that they were retaliating against him for filing complaints against fellow officers.[8] Even construing the Amended Complaint liberally, this Court cannot find a plausible allegation that the Waterford Police was motivated by race in its actions. See Brisbane, 2010 WL 3000975, at *5.

Finally, Traylor does not sufficiently plead a violation of his Fourth Amendment rights due to an illegal search and seizure. While he explains that he received his family trust document in a package from an employee of the Town of Waterford after his wife's death, he concludes without more that this document must have been taken from him by the Town of Waterford. His allegations that a police officer was illegally searching his property with a flashlight are similarly unsupported; other than noting that the officer was "walking around the Traylor's house." However, "[m]ere visual observations" are not searches, and "the Fourth Amendment does not protect what a person chooses to expose to the public view." Schwasnick v. Fields, No. 08cv4759, 2010 WL 2679935, at *4 (E.D.N.Y. June 30, 2010) (internal quotations omitted) (noting that municipal searches in particular are reasonable because of the "strong government interest in public health and safety," even when those searches involve trespass); see Palmieri v. Lynch, 392 F.3d 73, 84 (2d Cir. 2004) (evaluating a municipal search in the summary judgment context). Traylor alleges no facts to show that the police officer went beyond these bounds and

---

[8] For example, Traylor alleges that the officer responding to his 911 call concerning his dog was hostile and unresponsive as a "direct result of the previous[ly] filed complaint against the Waterford Police Department." (Amended Complaint ¶ 13).

entered his home or searched any private areas.

For these reasons, Traylor's § 1981 and § 1983 claims are dismissed.  Traylor also alleges defamation, intentional or negligent infliction of emotional distress, and violations of CUTPA against the Town of Waterford and Steward.[9]  However, since all of Traylor's federal claims have been dismissed against these defendants, this Court declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c)(3)**.**

**IV.    Conclusion**

In summary, and for the reasons set forth above, the motions to dismiss [Dkt. # 85, 87, 90, and 92] are GRANTED.

SO ORDERED  this 26th day of September 2011, at Hartford, Connecticut.


        /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[9] While the U.S. Supreme Court has recognized a § 1983 cause of action when defamation by a state official produces a serious additional harm that would violate due process, such as suspension from school based upon charges of misconduct, see Goss v. Lopez, 419 U.S. 565, 574-75 (1975), Traylor alleges no such additional constitutional harm stemming from the alleged defamation, and therefore his defamation claims do not amount to constitutional claims.

15